**SENECA NURSING HOME et al.,***
**Plaintiffs-Appellees,**

v.

**The KANSAS STATE BOARD OF SO-
CIAL WELFARE et al.,****
Defendants-Appellants.**

**No. 72–1242.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Jan. 9, 1973.

Decided Jan. 18, 1974.

---

* The action was brought by thirty-three named plaintiffs who were allowed to maintain the suit as a class action on their own behalf and for others similarly situated.

** Defendants in the District Court, in addition to the Kansas State Board of Social Welfare, included the Director of the Department of Social Welfare, the Chairman and other members of the Board of Social Welfare and the Secretary of the Department of Health, Education and Welfare of the United States. Of these only the State Officers and the Kansas State Board of Social Welfare are appealing.

J. J. B. Wigglesworth, Topeka, Kan. (Charles V. Hamm, Topeka, Kan., on the brief), for defendant-appellant Kansas State Bd. of Social Welfare.

T. Richard Liebert, Coffeyville, Kan. (Liebert & Liebert, Coffeyville, Kan., Jack A. Quinlan, Scott, Quinlan & Hecht, Topeka, Kan., and William A. Geoghegan, Pierson, Ball & Dowd, Washington, D. C., on the brief), for plaintiffs-appellees.

Before SETH, HOLLOWAY and DOYLE, Circuit Judges.

HOLLOWAY, Circuit Judge.

This case involves a dispute between a group of licensed nursing homes in Kansas and the State Board of Social Welfare (the Board) over payment for nursing services provided under state and federal welfare programs. The nursing homes seek to recover unspecified sums claimed for "reasonable, usual and customary charges" which they say they are entitled to by law and by contract and are unlawfully denied by a pay structure, essentially based on a formula of allowable cost plus a limited profit, that the Board claims is proper under controlling law and regulations, there being no contract. The trial court upheld the principal contention of the plaintiffs for the period prior to July 1, 1971, and we agree.

The court allowed the case to be maintained as a class action by named plaintiffs, who are appellees here, on behalf of themselves and the class of nursing homes similarly situated. Under licenses issued by the Kansas State Board of Health (the Board of Health), some plaintiffs are homes providing "skilled nursing care" as "nursing homes" and others are homes providing "simple nursing care" as "personal care homes," as defined under Kansas law.

Under Kansas law, K.S.A. Chap. 39, Art. 7, the State Board of Social Welfare, defendant-appellant here, is charged with developing state plans to provide care and assistance to chronically ill and infirm aged persons qualified for assistance under the federal Social Security law and with determining state policy and supervising such programs

under a plan not inconsistent with federal or state law.

This action was commenced in the state court and removed subsequently by the defendants, who were all then state officers and agencies, to the federal district court on the basis that the case involved the construction and interpretation of federal law and regulations.[1]

After trial the district court made detailed findings and conclusions. A declaratory judgment was entered sustaining the plaintiffs' main contention and deciding that they were entitled to payment on the standard of "reasonable, usual and customary charges" for the period before amendment of the Kansas Statutes in July, 1971. The damage claims for exact amounts of recovery were reserved. The state defendants appealed from the declaratory judgment in favor of the plaintiffs and no cross-appeal is being prosecuted by the plaintiffs on findings favorable to the defendants.

On this appeal the following questions are presented:

(1) Whether the action could properly have been brought in the federal court as one arising under federal law within 28 U.S.C.A. § 1331 and was thereby properly removed;[2] and

(2) whether the plaintiffs were entitled to payment for services under K.S.A. 39–708(x) on the standard of "reasonable, usual and customary" charges rather than on the cost plus basis provided by a manual of the State Department of Social Welfare and regulations of the Board; and

(3) whether there was a contractual basis for suit by plaintiffs enti-

tling them to maintain the action against the State agencies; and

(4) whether the manual was required to be promulgated in accordance with the notice, hearing and other procedural requirements of K.S.A. 77–415 et seq., which was not done; and

(5) whether the finding that all members of the plaintiffs' class were "medical providers" within the meaning of K.S.A. 39–708(x) was proper.

The trial court's opinion made a thorough statement of all the background facts, numerous contentions made and its rulings. We limit our statement to the facts necessary to treat the principal issues the appeal presents. These facts will be detailed in discussing the issues, to which we now turn.

## (1) *Federal court jurisdiction.*

As stated above, this Court has raised the question of subject matter jurisdiction on its own motion. We were concerned whether the action was one arising under federal law within the meaning of 28 U.S.C.A. § 1331 and therefore properly removable under 28 U.S.C.A. § 1441. Supplemental briefs were requested and have been filed by the parties. They both take the position that subject matter jurisdiction was proper in the trial court for the reason that the action is one arising under the Constitution and laws of the United States.

We will focus on the amended and supplemental complaint filed in the federal court after removal since the removing defendants went to trial on that pleading without objecting to federal jurisdiction or the filing of the amendment. See Craig v. Champlin Petroleum Co., 421 F.2d 236, 239 (10th Cir.); cf.

---

1. In the federal court the Secretary of the Department of Health, Education and Welfare was made an additional defendant. No relief was granted against him and he is not participating in this appeal.

2. The parties have raised no federal jurisdictional questions on appeal. However this

Court on its own motion at argument requested supplemental briefs as to whether the action was properly removable as one arising under federal law within the meaning of 28 U.S.C.A. § 1331. That question and related subsidiary ones are considered below.

Grubbs v. General Electric Credit Corp., 405 U.S. 699, 705–706, 92 S.Ct. 1344, 31 L.Ed.2d 612.[3] We must determine whether from the face of that complaint it appears that a right or immunity created by the Constitution or laws of the United States is an element, and an essential one, of the plaintiffs' cause of action. See Pan American Petroleum Corp. v. Superior Court, 366 U.S. 656, 663, 81 S.Ct. 1303, 6 L.Ed.2d 584; Gully v. First National Bank, 299 U.S. 109, 112–113, 57 S.Ct. 96, 81 L.Ed. 70. And it is no substitute that the defendant was almost certain to raise a federal defense. Pan American Petroleum Corp. v. Superior Court, supra at 663 of 366 U.S., 81 S.Ct. 1303.

■ The amended and supplemental complaint alleges several claims as deriving from the laws and Constitution of the United States.[4] It is unnecessary to analyze all the various claims. We are satisfied that claims A and F as stated in the margin are sufficient to support federal jurisdiction as substantial claims arising under federal law.

■ Claim A averred that qualified recipients are being denied a right alleg-edly guaranteed by the federal Social Security Act to receive care at the nursing home of their choice. See 42 U.S.C. A. § 1396a(a)(23). And claim F stated that Kansas Administrative Regulation 30–5–27 is in conflict with 42 U.S.C.A. § 1396a(a)(30) which stipulates essentially that state plans must provide methods and procedures relating to utilization and the payment for care and services as may be necessary to safeguard against unnecessary utilization and to assure that payments are not in excess of reasonable charges consistent with efficiency, economy and quality of care. We express no view on the merits of such claims of conflict between the Kansas manual and regulations and the federal statutes beyond saying that they are not so wholly insubstantial that federal jurisdiction does not exist. See Harmony Nursing Home, Inc. v. Anderson, 341 F.Supp. 957 (D.Minn.). We conclude that the claims made could not be dismissed as obviously without merit and defective as a jurisdictional base. See Levering & G. Co. v. Morrin, 289 U. S. 103, 105, 53 S.Ct. 549, 77 L.Ed. 1062; see also Goosby v. Osser, 409 U.S. 512, 518, 93 S.Ct. 854, 35 L.Ed.2d 36. And

3. While the state defendants did not challenge the jurisdiction on the basis that a federal tribunal as such lacked power to hear the suit, they have maintained that because of the lack of a contract with the plaintiffs, no suit could be maintained against them at all in view of K.S.A. 39–708(k).

4. Among other things in essence these allegations were:

A. Qualified recipients are being denied a right allegedly guaranteed by the federal Social Security Act, to receive care at the nursing home of their choice.

B. The Kansas plan is in violation of federal law because it does not make adult home care "available to some" on the same basis it is available to the general public.

C. The provisions of the new "Nursing Home Manual" impair obligations of long term contracts of the nursing homes to provide nursing care to persons qualified to receive such care and that the changes violated rights protected by Article I, § 10 of the United States Constitution.

D. The prohibition against supplemental payments constitutes a taking of property without due process of law and such provision does not comply with the five basic priorities of Title XIX of the Social Security Act. 42 U.S.C.A. § 1396a(a)(13).

E. Plaintiffs were denied equal protection of the laws by the manual because it required them to provide special personnel, equipment, and services to recipients for less than the reasonable, usual and customary charge.

F. The Kansas Administrative Regulation 30–5–27 is in conflict with 42 U.S.C.A. § 1396a(a)(30) [§ 1902(a)(30) of the federal Social Security Act].

G. Kansas Regulation 30–5–27 is in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution because it requires partiality in the amount of payments.

H. The system administered by the defendants is contrary to the federal Social Security Act because no amended plan for providing care in "intermediate care facilities" has been filed and approved as required by 42 U.S.C.A. § 1320a.

the plaintiffs as recipients of payments would have standing for themselves and for the interest of those served by them to assert these claims in view of the relationship to the indigents cared for. See Harmony Nursing Home, Inc. v. Anderson, supra at 959 of 341 F.Supp.; see also Sierra Club v. Morton, 405 U.S. 727, 737, 92 S.Ct. 1361, 31 L.Ed.2d 636; Barrows v. Jackson, 346 U.S. 249, 256–258, 73 S.Ct. 1031, 97 L.Ed. 1586.

■ While not granting relief to the plaintiffs on federal grounds the trial court sustained the plaintiffs' principal position under state law. In so doing the court exercised pendent jurisdiction over these claims. When the declaratory judgment was entered on state grounds the federal claims had not been dismissed or abandoned. In these circumstances and in view of the complexity of the intertwined federal issues, the exercise of pendent jurisdiction was within the reasonable discretion of the trial court. See United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218.

### (2) The validity of the Board's cost plus formula for payment.

The district court held that the formula of the Board based on allowable cost plus a limited profit was repugnant to K.S.A. 39–708(x), as the statute existed until July 1, 1971. This holding was expressed by declaring that such provisions of the manual effective July 1, 1970, were unlawful in view of the statute.[5] The holding also was expressed by declaring that the regulation of the Board, K.A.R. 30–5–27, which likewise adopted the formula, was contrary to the statute.[6]

We should refer briefly to the federal and state statutory provisions involved as a background for our discussion.

The federal Social Security Act consists of several enactments under which the federal government makes funds available to the states for the care of various categories of needy individuals. The sections of the federal statute with which we are concerned are Title XVI (Grants to the States for Aid to the Aged, Blind or Disabled or for Such Aid and Medical Assistance for the Aged, 42 U.S.C.A. §§ 1381 et seq.) and Title XIX (Medicaid) (Grants to States for Medical Assistance Programs, 42 U.S.C.A. §§ 1396 et seq.).

Of particular relevance here are those sections of the federal statute providing for grants to states for assistance to needy individuals for institutional care under Title XVI in "intermediate care facilities," 42 U.S.C.A. §§ 1320a and 1385(b). We are also concerned with Title XIX provisions dealing with "skilled nursing homes," 42 U.S.C.A. §§ 1396a(a)(13)(C)(ii) and 1396d(a)(4)(A). For the purposes of Title XVI, intermediate care facilities are defined so as to include only those facilities not providing the degree of care required of skilled nursing homes under Title XIX. See 42 U.S.C.A. § 1320a(e).

A state may participate and receive funds under these programs by submitting to the Secretary of Health, Education and Welfare a plan meeting requirements of federal law and regulations. As stated earlier, under Kansas law, K.S.A. Chap. 39, Art. 7, the appellant Kansas State Board of Social Welfare is charged with the duty of providing care and assistance under the federal Social Security Act and of determining state policies and supervising and administering the plans, which have been filed for participation in Title XVI and Title XIX programs. See K.S.A. 39–708. Under these plans the Kansas Board of Health, which is the licensing

---

5. As discussed in detail below the manual was also held invalid for lack of compliance with procedural requirements for its promulgation.

6. The trial court also held this regulation invalid as to earlier provisions allowing payment at rates negotiated by the County Departments of Social Welfare. For reasons that follow we also agree with this holding under K.S.A. 39–708(x).

agency for Kansas nursing, personal care and boarding homes, K.S.A. 39–923, has been designated as the state authority responsible for establishing and maintaining standards for institutions in which recipients may receive care or services, as required by 42 U.S.C.A. §§ 1396a(a)(9) and 1382(a)(9).

Plaintiffs' class of nursing homes provides nursing care under licenses issued by the Kansas Board of Health. Those licensed as "nursing homes" provide "skilled nursing home care" and those licensed as "personal care homes" provide "simple nursing care." As defined by the Board of Health, the skilled nursing homes are required to provide a level of medical care and health services commonly performed by or under the immediate supervision of a licensed registered nurse. The personal care homes are required to provide the "selected acts in the care of the ill, aged or infirm requiring certain knowledge and specialized skills, but not requiring the substantial specialized skills, judgment and knowledge required in skilled nursing care." See K.S.A. 39–923.

The facts are not entirely clear, but it appears that sometime in the spring of 1970 an "Adult Care Homes Manual" with a program for centralized payment was issued at the Board's direction. The Director of Social Welfare ordered the County Boards to put the manual into effect as of July 1, 1970, with some of the program covered thereby to become effective July 1, 1971. The manual provided that adult care homes, including the plaintiffs' class, were to be compensated by an allowable cost plus fixed fee formula for services provided to qualified recipients under the programs. Previously these services had been paid for on a negotiated basis by the 105 County Welfare Boards.

After this suit was filed in the state court a preliminary injunction was issued there "against the manual." Subsequently on August 5, 1970, the State Department of Social Welfare issued an amended regulation 30–5–27, set out in the margin.[7] This regulation contains the cost plus formula that is the primary issue in this case. The formula provided that the fees were to be paid on the basis of cost plus a reasonable profit, subject to budgetary limitations. On January 1, 1971, the regulation became permanent, with minor changes and deletion of the provision on budgetary limitations.[8]

The trial court found, as is in effect conceded by defendants, that there was

7. "K.A.R. 30–5–27 FEES FOR [NURSING HOME] *ADULT* CARE *HOME SERVICES.* The fee for payment for *levels of* care [of medical assistance recipients in skilled nursing homes and in establishments with registered nurses and licensed practical nurses on the staff shall not exceed the rate paid by the county welfare department for similar care and services provided to recipients of the other categories of assistance.] *in adult care homes shall be based upon the home's cost determined by data submitted by the home as required by the department plus a reasonable profit and subject to the department's budgetary limitations so that such fee for skilled nursing home services for patients qualifying for Title XIX benefits shall be the reasonable usual and customary charges for such home as determined by the above method. For adult care homes other than those qualifying as skilled nursing homes under the Title XIX program, the above method may be waived for the year July 1, 1970 to the year July 1, 1971, during* which time the fees will be determined by the County Board of Social Welfare with the approval of the State Board." [Deletions in brackets—additions italicized.]

8. "K.A.R. 30–5–27 FEES FOR *ADULT* CARE *HOME SERVICES.* The fee for payment for *levels of* care *in adult care homes shall be based upon the home's cost plus a reasonable profit which fee shall be determined by cost and other data submitted by the home as required by the department so that such fee for skilled nursing home services for patients qualifying for Title XIX benefits shall be the reasonable, usual and customary charges for such home as determined by the above method. For adult care homes other than those qualifying as skilled nursing homes under the Title XIX Program, the above method may be waived until July 1, 1971 during which time the fees will be determined by the County Board of Social Welfare with the approval of the State Board."*

no regulation before August 5, 1970, by the Kansas Department of Social Welfare authorizing the provisions of the manual. And more importantly for our purposes, the trial court found that the regulation, K.A.R. 30–5–27 as adopted in 1968 and as subsequently amended, and the manual, were inconsistent with K.S.A. 39–708(x) until amendment of the statute on July 1, 1971, when the terms "usual and customary" were dropped from the statutory standard of "reasonable, usual and customary." [9]

Among other things the state defendants argue that the Board must take availability of funds into account and adopt payment methods considering such circumstances which the Board's formula did. And they say that the Board's method of payment was a proper administrative action under the statutory standard of "reasonable, usual and customary" charges, which was directory and not mandatory or to be followed literally.

■ In view of the statutory provisions and Kansas decisions we agree with the trial court's holding that the cost plus formula was repugnant to the Kansas Statutes. Subsequent to the trial court's decision the Kansas Supreme Court decided Rhodes v. Harder, 508 P.2d 959, opinion modified, 512 P.2d 354, also involving K.S.A. 39–708(x). There another regulation, K.A.R. 30–5–29, dealing with payments for medical and professional services was challenged. Asserting that he was authorized to do so by the regulation, the Director of Social Welfare imposed a 25% discount on the regular charges for certain providers of medical services.

The Court held that the regulation and the administrative action attempting the discount were beyond the authority of K.S.A. 39–708(x) requiring that fees for medical and professional services be the reasonable, usual and customary charges. While payment for a different category of services was involved in the Rhodes case, the issue there under the statutory provision on "reasonable, usual and customary" charges parallels the issue involved in this case. We therefore agree with the views of the district court. While there are some differences in the issue before us, we agree with the views of the resident District Judge on the unsettled law of his state which are persuasive and ordinarily accepted. Sade v. Northern Natural Gas Co., 483 F.2d 230, 234 (10th Cir.).

For these reasons we affirm the declaratory judgment which determined

---

9. Prior to the July 1, 1971, amendment, the statute allowed payment for certain qualifying providers of services under the federal Social Security Act for "reasonable, usual and customary charges." The July 1, 1971, statutory amendment dropped the words "usual and customary." As amended effective July 1, 1971, K.S.A. 39–708(x) reads as follows:

"(x) The state board shall take such action as may be necessary to assure that *persons, firms and corporations selling property or providing services and* licensed practitioners, within the scope of their practice as defined by state law who provide professional services under the provisions of the federal social security act, shall be paid [their] reasonable [usual and customary] charges. Payment for other medical assistance under the provisions of the federal social security act shall be [the] reasonable [usual and customary] charges: *Provided, however,* That if such payments are otherwise limited by federal law, such payments shall be as near the reasonable [usual and customary] charges as may be permitted by federal law."

As noted by the Kansas Supreme Court in Rhodes v. Harder, 512 P.2d 354, modifying 508 P.2d 959, in 1972 the Kansas legislature enacted a "substantively duplicate" counterpart to K.S.A.1972 Supp. 39–708(x). This counterpart was K.S.A.1972 Supp. 39–708b (x) and it contained once again the language of "reasonable, usual and customary charges." In K.S.A.1972 Supp., 39–708(x) still also appeared containing the term "reasonable charges." Later 39–708(x) and 39–708b(x) were expressly repealed and 39–708c(x) was enacted, again containing only the term "reasonable charges."

These statutory changes are noted but are not controlling in our case which concerns only periods of time prior to this 1972 amendment. And the original holding in Rhodes v. Harder was in no way altered by the modifying opinion.

that the manual and the regulation were inconsistent with K.S.A. 39–708(x) from its enactment until its amendment effective July 1, 1971.[10]

(3) *The trial court's finding of a contract and the governmental immunity provisions of K.S.A. 46–901.*

The state defendants challenge the trial court's finding that a unilateral contract existed between the State Board and the plaintiffs. They argue that K.S.A. 39–708(k), which provides for the making of contracts in the name of the Board, contemplates a written document, which was not found to exist in this case; that without such a written contract suit may not be maintained against the Board in view of K.S.A. 39–708(k); that K.S.A. 39–708(x) cannot support a finding of a contract because it is a legislative act and therefore not a contract of the Board; that the Board cannot be a party to an implied contract because it has retained no funds of a county, state or federal source under Title XIX or Title XVI other than up to one dollar per patient-day for Title XIX skilled nursing homes; that any claim against the Board based on an implied contract was required to be presented to the Joint Claims and Accounts Committee of the State Legislature by K.S.A. 46–901 et seq., which was not done; and that there can be no impairment of a contract right, since none exists.

■ We feel that the trial court did not err in finding the existence of a unilateral contract. The terms and conditions for performance of services required of the plaintiffs were set forth by the state plans filed with the Secretary of Health, Education and Welfare. Payment pursuant to the statutory standard of reasonable, usual and customary charges became part of the arrangement. See Securities Acceptance Corp. v. Perkins, 182 Kan. 169, 318 P.2d 1058, 1061. And such a contract may be made binding and mutual by the per-

formance contemplated, and the receipt of promised benefits. Commercial Asphalt, Inc. v. Smith, 196 Kan. 164, 409 P.2d 796.

■ The trial court's opinion did not discuss K.S.A. 46–901, the governmental immunity statute. 46–901 does declare that state boards, commissions and the like are immune from liability and suit on an implied contract, among other things. And the trial court's opinion did state that there was an implied contract between the state and the plaintiffs. However, this statement was not made with a view to K.S.A. 46–901, and we feel it improper to infer any such effect. In view of the plan, the statutory measure of payments and the requirements for licenses granted by the State Board of Health, we feel there was an understanding as to the essential terms. In such circumstances an express contract existed. See In re Rogers' Estate, 184 Kan. 24, 334 P.2d 830. Stark County v. State, 160 N.W.2d 101 (N.D.), relied on by defendants, is not persuasive since the circumstances recited above support the finding of a unilateral contract in our case.

We agree with the trial court's view that there was a unilateral contract and accept the finding of such a contract under Kansas law.

(4) *The validity of the manual under the procedural requirements for notice, hearing and the like prescribed by K.S.A. 77–416 and 77–421 for rules and regulations.*

■ The trial court found that the manual, "which contains rules, regulations, standards and statements of policy and general orders applicable to all adult care homes of every classification in the State affects private rights and interests and is directed to a group which does constitute a general class and must therefor be filed in accordance with K.S.A. 77–416 with notice required by K.S.A. 77–421." There was no compliance

---

10. No issue is before us concerning the manual or regulation for the period subsequent to July 1, 1971.

with the procedural requirements and the sole question is whether the manual came within the procedural requirements of the statutes.

K.S.A. 77–415(4) defines "Rule or regulation" and enumerates certain exemptions from the definition and requires that " . . . every statement of general policy and every interpretation of a statute specifically adopted by an agency to govern its enforcement or administration of legislation shall be adopted by the agency and filed as a regulation as provided" by the act.

The language of K.S.A. 77–415(4) logically applies to the manual as a rule or regulation governing enforcement and administration of legislation. Moreover the exemptions in K.S.A. 77–415(4) (inter alia, purchases of materials, equipment or supplies by state agencies, and rates, prices, charges and the like for common carriers) contemplate that provisions like those in the manual come within the statute unless specifically exempted therefrom.

We are persuaded that the trial court's holding that the manual came within the provisions of the statutes was correct.

(5) *The trial court's ruling that the plaintiffs' class provides medical assistance within the meaning of K. S.A. 39–702 and 39–708(x).*

Finally the defendants challenge the trial court's determination that the plaintiffs' class provides medical assistance within the meaning of K.S.A. 39–702 and K.S.A. 39–708(x).[11] The determination was made in the declaratory judgment as well as in findings of fact 2 and 7, all of which are attacked. Specifically the defendants argue that only those nursing homes coming within the definition of a "skilled nursing home"

under Title XIX provide medical assistance within the meaning of the Kansas Statutes, and that other facilities do not afford such services or come within the provisions of K.S.A. 39–708(x) on payment for medical assistance.

We must agree again with the trial court's determination as reasonable under the Kansas Statutes and regulations. First we note that the manual itself recognizes that under the existing licensing system personal care homes, which provide the lowest standard of care in plaintiffs' class, are qualified to offer intermediate care # 2 under the manual which includes care for persons with relatively minor chronic incapacity or infirmity. Such intermediate care # 2 also includes care for minor and usual ills, and occasional periods of illness. See Manual, p. 12. Moreover K.S.A. 39–923 defines "simple nursing care" provided by a "personal care home" as including acts in the care of the ill, injured or infirm requiring certain knowledge and specialized skills, but not requiring the substantial specialized skills, judgment and knowledge required in skilled nursing care. And similar standards are recognized in the definition of a "personal care home" in the rules and regulations of the Kansas State Board of Health. See K.A.R. 28–38–1.01.

Viewing the record as a whole we are satisfied that the determination of the trial court concerning the plaintiffs' class was a reasonable and proper interpretation of the Kansas Statutes and regulations.

For these reasons we agree with the challenged rulings of the trial court. The declaratory judgment is, therefore, affirmed and the cause is remanded for disposition of the reserved claims for damages as provided in the order of the trial court.

---

11. 39–702 provides that medical assistance shall mean medical, remedial, preventive or rehabilitative care and services furnished by licensed practitioners.

39–708(x) covers licensed practitioners providing professional services and also makes provision for payment for other medical assistance under the provisions of the federal Social Security Act.