**OSTROW PHARMACIES, INC., et al.**

v.

**Frank BEAL, Secretary of Welfare, et al.**

Civ. A. No. 75–158.

United States District Court,
E. D. Pennsylvania.

April 4, 1975.

Daniel Sherman, Philadelphia, Pa., for plaintiffs.

Michael Minkin, Howard Holmes, M. Faith Angell, Philadelphia, Pa., for Frank Beal, Sec. of Welfare and other defendants.

Henry Kolowrat, Philadelphia, Pa., for Paid Prescriptions, Inc., defendant.

## MEMORANDUM OPINION AND ORDER

BRODERICK, District Judge.

This is an action in which the plaintiffs, six pharmacies in the city of Philâdelphia, seek to enjoin the defendants from proceeding under the terms of a contract entered into between Paid Prescriptions, Inc. (PAID) and the Pennsylvania Department of Public Welfare (DPW), which contract was to take effect February 1, 1975. On January 20, 1975, the plaintiffs filed their complaint invoking jurisdiction under 28 U.S.C. § 1331, alleging a federal question and damages in excess of $10,000.-00. Plaintiffs' cause of action is based on Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., and related provisions of the Code of Federal Regulations. On that same day, this Court ordered that pursuant to Rule 65(a)(2), F.R.Civ.P. a consolidated hearing on the motion for a preliminary injunction and a hearing on the merits would be held on January 28, 1975. The Court ordered further that the parties submit Findings of Fact and Conclusions of Law on January 27, 1975. The hearing on the merits commenced on January 28, 1975, and concluded on February 4, 1975. On January 31, 1975, a Temporary Consent Decree was entered into between the parties pursuant to which it was agreed that the contract between PAID and DPW should take effect as scheduled on February 1, 1975, subject to certain agreed conditions, for a period of thirty days. After due consideration of the pleadings, briefs and evidence presented at the hearing, the Court has determined herein that the relief requested by the plaintiffs must be denied. This Memorandum and Order shall constitute the Court's Findings of Fact and Conclusions of Law in accordance with Rule 52 (a), F.R.Civ.P.

The plaintiffs, six retail pharmacies located in Philadelphia, challenge a contract between PAID and DPW, effective February 1, 1975, which calls for the administration by PAID of a new statewide Medicaid program for prescription drug reimbursement (hereinafter referred to as the PAID program). The plaintiffs contend that this contract which provides that pharmacies participating in the program shall be paid on the basis of drug cost plus $1.85 dispensing fee per prescription is in conflict with the provisions of Title XIX of the Social Security Act, 42 U.S.C. § 1396

et seq., and the federal regulations of the Department of Health, Education, and Welfare concerning the administration of the Medicaid program. The plaintiffs seek to enjoin the defendants from proceeding with the PAID program. Plaintiffs also seek compensation "for losses and damages and reasonable counsel fees and costs" for alleged losses sustained.

At the close of the plaintiffs' case, the defendants, pursuant to Rule 41(b), moved to have the complaint against the Commonwealth of Pennsylvania and the Pennsylvania Department of Public Welfare dismissed on the basis of immunity from suit under the Eleventh Amendment. At the close of the evidence, the defendants reasserted this motion and the Court dismissed the complaint against these two defendants on the basis of Edelman v. Jordan, 414 U.S. 1301, 94 S.Ct. 1347, 38 L.Ed.2d 15 (1974) and Downs v. Department of Public Welfare, 368 F.Supp. 454 (E.D.Pa.1973).

The remaining defendants have raised the following issues by way of defense to this action: (1) That the plaintiffs have failed to meet the $10,000.00 jurisdictional amount required under 28 U.S.C. § 1331; (2) That the plaintiffs do not have standing to sue; and (3) That under the facts and the law the plaintiffs are not entitled to the relief requested.

*Jurisdiction*

■ Plaintiffs allege that this Court has jurisdiction under 28 U.S.C. § 1331. There is no question that plaintiffs' attack on the PAID program on the basis that it conflicts with the provisions of federal statutes and federal regulations promulgated thereunder presents a federal question as to which this Court has jurisdiction. Seneca Nursing Home v. Kansas State Board of Social Welfare, 490 F.2d 1324 (10th Cir. 1974). The plaintiffs have alleged in their complaint that "the amount in controversy . . . exceeds the sum of Ten Thousand ($10,000.00) Dollars" and that "plaintiffs have sustained and will sustain money losses and damages by virtue of the actions of the defendants . . . ." Defendants contend, however, that plaintiffs have failed to demonstrate that the "amount in controversy" exceeds the sum of $10,000.00, exclusive of interest and costs. It is not incumbent upon a plaintiff to show to an absolute certainty that he will obtain a verdict in excess of $10,000.00; however, in order for the Court to dismiss a suit for lack of the jurisdictional amount, it must appear to a legal certainty that the plaintiff will not recover a sum in excess of $10,000.00. Opelika Nursing Home, Inc. v. Richardson, 448 F.2d 658 (5th Cir. 1971); Nelson v. Keefer, 451 F.2d 289 (3d Cir. 1971). Moreover, claims may not be added together to provide the $10,000.00 jurisdictional amount in controversy. Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). The defendants argue that it is apparent to a legal certainty that no plaintiff can recover in excess of $10,000.00 in damages, since any loss which the plaintiffs might suffer would be the result of their own voluntary action in not participating in the PAID program. The plaintiffs claim that the $1.85 dispensing fee plus the cost of the drugs for each prescription as provided by the PAID program will cause each of them substantial financial damage in excess of $10,000.00. The plaintiffs produced evidence in support of their claim that implementation of the PAID program will substantially cut their income and result in loss to each plaintiff in excess of $10,000.00. Such evidence was presented by the direct testimony of two plaintiffs. In an effort to expedite the hearing, the parties agreed that the testimony of the other four plaintiffs as to damages would be substantially similar to the testimony presented by the two plaintiffs who did testify. The Court heard the evidence as to damages for the sole purpose of determining whether it had jurisdiction and finds that it does not appear to a legal certainty that the

plaintiffs will not each recover a sum in excess of $10,000.00. Accordingly, this Court finds that it has jurisdiction pursuant to 28 U.S.C. § 1331. Opelika Nursing Home, Inc. v. Richardson, 356 F.Supp. 1338 (M.D.Ala.1973), aff'd 490 F.2d 841 (5th Cir. 1974).

### Standing

█ The defendants contend that the plaintiffs have no standing to raise the issues which have been presented in this case. The plaintiffs are pharmacies which have been filling prescriptions for welfare recipients. Prior to the PAID program they received directly from the Commonwealth a fee for each prescription based upon the cost of the prescribed drugs plus a standard 50% mark-up, up to a $10.00 maximum. We find that these plaintiffs do have sufficient personal stake in the outcome of this controversy to give them standing to bring this lawsuit. Data Processing Service Org. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Seneca Nursing Home v. Kansas State Board of Social Welfare, 490 F.2d 1324 (10th Cir. 1974); Harmony Nursing Home, Inc. v. Anderson, 341 F.Supp. 957 (D. Minn.1972); see also Sierra Club v. Morton, 405 U.S. 727 (1972); Opelika Nursing Home, Inc. v. Richardson, 356 F.Supp. 1338 (M.D.Ala.1973), aff'd 490 F.2d 841 (5th Cir. 1974).

### Discussion of the Merits

█ Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., establishes a federal program which provides medical assistance to individuals whose economic resources are insufficient to meet the cost of necessary medical services. This program is known as "Medicaid". It is a matching-fund program administered by the Department of Health, Education and Welfare in conjunction with participating states. The federal funds used to finance the Medicaid pro-

grams are disbursed by the state, pursuant to the Social Security Act and regulations. The state channels the money through an appropriate state agency to various providers of medical services including pharmacies. The amount of such payment is largely within the discretion of the state, subject however to the Social Security Act and the federal regulations enacted thereunder. Opelika Nursing Home, Inc. v. Richardson, 448 F.2d 658 (5th Cir. 1971).

The Commonwealth of Pennsylvania participates in the Medicaid program and, in addition to other medical services, provides prescription drugs for certain people with low incomes. Through DPW, the state reimburses licensed pharmacies who fill prescriptions for eligible needy medical recipients. Prior to February 1, 1975, DPW directly administered this program by paying the participating pharmacies the cost of the prescribed drug plus a standard 50% mark-up for each prescription filled, up to a $10.00 maximum. No pharmacy was required to participate in the program; participation was voluntary.

The Commonwealth decided to change its method of operating the Medical prescription program and in July, 1974, solicited proposals from non-profit companies to administer the Medicaid prescription program. (Pa.Bull. Vol. 4, No. 31, July 20, 1974). Blue Cross/Blue Shield and PAID submitted bids to the Commonwealth. Both organizations proposed to administer the program and pay a fee of $1.85 for each prescription plus the cost of the drugs. According to the Commonwealth, PAID's proposal was lower in cost and the Commonwealth entered into a contract with PAID on November 6, 1974. This contract provided that the PAID program should start February 1, 1975. Under the contract with PAID, DPW is required to pay a predetermined premium for each eligible Medicaid recipient.[1]

---

1. At the time of the hearing under the program directly administered by the state, there were approximately 2400 pharmacies providing 6,900,000 drug services annually

Under the contract, participating pharmacies receive from PAID the cost of the drugs plus $1.85 per prescription for legend[2] drugs and the cost of the drugs plus 50% mark-up for nonlegend drugs[3] with a maximum of $15.00 per prescription. PAID bears the loss if the premium total received from the Commonwealth is less than the claims paid. PAID bears the cost of administering the program. In the event the premiums received exceed the amounts paid and the costs of administering the program, the Commonwealth and PAID share the surplus, pursuant to a formula provided in the contract.

The plaintiffs are six pharmacies in Philadelphia who participated in the Medicaid program for prescription drug reimbursement during the period immediately prior to February 1, 1975, the date on which the PAID program was due to commence. At the time of the hearing, the plaintiffs had not agreed to participate in the PAID program. The plaintiffs argue that the PAID program violates 42 U.S.C. § 1396a(a)(30) and 45 C.F.R. § 250.30(b)(2)(i)(a), the federal regulation promulgated thereunder, in that the fee of $1.85 plus the cost of drugs provided by the PAID program was not determined "by analysis of pharmacy operational data which includes such components as overhead, professional services, and profit." The plaintiffs contend that 45 C.F.R. § 250.-30(b)(2)(i)(a) requires a state to make an analysis of pharmacy operational data which includes such components as overhead, professional services and profit, before contracting to pay pharmacists a dispensing fee under the Medicaid program. The defendants admit that no such analysis has been made.

Title XIX of the Social Security Act, as amended, serves as the basic authority for Medicaid. Section 1396a(a)(30) of the Social Security Act provides:

(a)(30) A State plan for medical assistance must . . . provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan as may be necessary to safeguard against unnecessary utilization of such care and services to assure that payments (including payments for any drugs provided under the plan) are not in excess of reasonable charges consistent with efficiency, economy, and quality of care.

The above-quoted section of the Act requires that a state plan must assure that payments for any drugs provided under the plan are not in excess of reasonable charges consistent with efficiency, economy and quality of care. Supplementing this provision of the Act, federal regulation 45 C.F.R. § 250.30, entitled "Reasonable Charges", was promulgated. This regulation in pertinent part provides as follows:

(a) *State plan requirements.* A State plan for medical assistance under title XIX of the Social Security Act must:

\* \* \* \* \* \*

(3) Provide that payments for care or service are not in excess of the upper limits described in paragraph (b) of this section.

\* \* \* \* \* \*

(6) Provide that fee structures will be established which are designed to enlist participation of a sufficient number of providers of services in the program so that eligible persons can receive the medical care and services included in

to 875,000 persons eligible for Medicaid and about 40% of those eligible resided in Philadelphia.

2. Legend drugs are those drugs or preparations which carry a federal caution required by federal law which states: "Federal law prohibits dispensing without a prescription."

3. Nonlegend drugs are any other drugs or preparations which do not require the federal caution and which are generally sold over-the-counter without a prescription.

the plan at least to the extent these are available to the general population.

\* \* \* \* \* \*

(b) *Upper limits.* The upper limits for payments for care and services under a medical assistance plan are as follows: The State agency may pay less than the upper limits.

. . .

\* \* \* \* \* \*

(2) *Drugs.* (i) The upper limit for payment for prescribed drugs —whether legend items (for which a prescription is required under Federal law) or nonlegend items —shall be based on the following methods:

(a) Cost as defined by the State agency plus a dispensing fee. The dispensing fee should be ascertained by analysis of pharmacy operational data which includes such components as overhead, professional services, and profit. Indices to be considered should include payment practices of other third-party organizations, including other Federal programs. Both the cost and the dispensing fee may vary according to the size and location of the pharmacy and according to whether the dispensing is done by a physician or by an outpatient drug department of an institution, and according to whether the drug is a legend or a nonlegened item. In evaluating a dispensing fee by analysis of operational data, the objective of the State agency should be to insure that the average prescription price paid by the State agency does not exceed the average prescription price paid by the general public.

(b) The method described for Other Services in subparagraph (3)(i) of this paragraph.

The defendants contend that the thrust of the Act and the federal regulations requires a state to make payments "that are not in excess of reasonable charges". The defendants also contend that the state is not bound by any particular formula in determining the amount it pays to providers under the Medicaid program, provided the state pays less than the upper limits. The defendants contend that § 250.30 provides various methods for establishing upper limits, but the regulation does not require the state to pay the upper limit. The Court agrees. Regulation 250.30 clearly states in subsection (b) that "The State agency may pay less than the upper limits." Regulation 250.30 does not establish a minimum fee for pharmaceutical services; it sets forth the upper limit or maximum fee to be paid pharmacists. The purpose of this regulation is to achieve the lowest cost for medical services consistent with efficiency, economy and quality of care. The thrust of the plaintiffs' complaint and the evidence which they presented is that the $1.85 dispensing fee is too low and after considering overhead and professional services, will not provide them with a profit or will cause them to operate at a loss.[4] Plaintiffs do not contend that the dispensing fee of $1.85 under the PAID program is in excess of the upper limit provided in the regulations.

In any event it is the defendants' position that the contract between the Commonwealth and PAID is a "prepaid capitation arrangement" and that the applicable portion of regulation 250.30 is subsection (b)(4) which provides:

(b)(4) *Prepaid capitation arrangements.* The upper limit for payment for services provided on a prepaid capitation basis shall be established by ascertaining what other third parties are paying for comparable services under comparable circumstances. The cost for

4. Commonwealth Exhibit C–6 is a statistical comparison prepared by DPW which seeks to show that on the basis of the same number of prescriptions filled by the plaintiffs in 1974, the plaintiffs would receive more under the PAID program based on the $1.85 dispensing fee than they would based upon the prior 50% mark-up system.

providing a given scope of services to a given number of individuals under a capitation arrangement shall not exceed the cost of providing the same services while paying for them under the requirements imposed for specific provider services.

The plaintiffs contend that the PAID program is not a prepaid capitation arrangement and that in any event the state did not ascertain what other third-party organizations are paying for comparable services under comparable circumstances as required by the above-quoted subsection. Defendants contend that the arrangement between PAID and DPW is indeed a prepaid capitation arrangement and that (b)(4) prescribes the method for establishing upper limits in such arrangements. The Court after considering the testimony of the several witnesses called to testify on this issue, as well as the documentary evidence, finds that the contract between PAID and the Commonwealth is a "prepaid capitation arrangement". In July of 1974, the Commonwealth in its request for a proposal to administer the state Medicaid prescription drug reimbursement program stated:

This Request for Proposal calls for the development of a prepaid insurance contract in which the contractor provides pharmaceutical services to Public Assistance recipients eligible for Medical Assistance at a fixed premium based on a capitation formula varying for each aid category.

In the contract with PAID, the Commonwealth is obligated to pay a fixed per capita fee for each eligible recipient in a particular category irrespective of the actual amount of drugs that the recipient ultimately obtains. PAID bears the risk that the recipients might be eligible to receive prescription drugs in excess of the premiums received by PAID. The rights and obligations of the pharmacies which agree to participate in the PAID program arise only in connection with the filling of a recipient's prescription and only those pharmacies which elect to do so participate in the prescription drug reimbursement program. The pharmacies themselves bear no insurance risk, this risk is borne entirely by PAID. Furthermore, the Commonwealth did ascertain what other third parties were paying for comparable services under comparable circumstances. Evidence was presented by the defendants showing as of January 1, 1974, other state administered programs paid dispensing fees as follows (Exhibit C–4): Colorado, $1.85; Connecticut, $1.75; Delaware, $2.00; Georgia, $1.85; Indiana, $1.85; Kansas, $.92—$2.22 per cost of operation; Louisiana, $1.80; Maryland, $1.75; New Jersey, $1.85; New York, $1.85. Evidence was also presented that as of June 10, 1974, other state and private plans paid dispensing fees as follows (Exhibit C–4): Massachusetts, $1.85; North Carolina, $2.00; Paid Prescriptions for Commonwealth Employees, $1.75; Paid Prescriptions Union Plan, $1.85; Medomet, $1.85; Veterans Administration, Reasonable Charges; Blue Cross, $1.85. In addition, evidence was presented which showed that approximately forty plans administered by PAID in the Commonwealth pay dispensing fees of $1.85. In August, 1974, the Commonwealth advised interested bidders that the dispensing fee should not be less than $1.75 (Exhibit C–7). Blue Cross/Blue Shield and PAID in their respective bids proposed a dispensing fee of $1.85. Although a representative of DPW testified that he was not aware of the particular benefits that were offered under these various other medical assistance programs, he did testify that he was satisfied that at the $1.85 level, DPW was not paying more or less for professional services under the PAID program than was being paid under other third-party programs.

The defendants presented the testimony of a medical services inspector who is employed by the United States Department of Health, Education, and Welfare. This witness testified that it was the opinion of the Regional and

Central Office of HEW that the contract between PAID and the Commonwealth was a prepaid capitation arrangement under subsection (b)(4) of federal regulation 250.30 and that subsection (b)(2)(i)(a) was not applicable thereto. The witness testified further that since this is a prepaid capitation arrangement payments to pharmacists could be established by ascertaining what other third parties are paying for comparable services under comparable circumstances. Moreover, this witness testified that subsections (b)(2)(i)(a) and (b)(4) deal only with upper limits for payment of services which a state may not exceed and that neither subsection imposed upon a state a duty to set minimum payments. Such testimony is to be accorded great deference. Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); Budd Co. v. Occupational Safety and Health Review Commission, 513 F.2d 201 (3d Cir., filed March 24, 1975); see also Shea v. Vialpando, 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974). The Court agrees with this interpretation of the regulation.

 The plaintiffs advanced several other arguments which this Court feels lack sufficient merit to require discussion. One argument is that the fee structures under the PAID program are not "designed to enlist a sufficient number of providers of services in the program so that eligible persons can receive the medical care and services included in the plan at least to the extent these are available to the general population," as required by 45 C.F.R. § 250.30(a)(6). The Court stated at the conclusion of the hearing that there was not sufficient evidence presented on which the Court could find that the fee structure under the PAID program will not "enlist a sufficient number of providers of services in the program so that eligible persons can receive the medical care and services included in the plan at least to the extent these are available to the general population," as required by 45 C.F. R. § 250.30(a)(6).

In conclusion, it is clear that the plaintiffs have failed to show that the contract entered into between PAID and the Commonwealth, effective February 1, 1975, is in conflict with the Social Security Act and/or applicable Federal Regulations.

Accordingly, the following Order is entered:

## ORDER

And now, to wit, this 4th day of April, 1975, it is hereby ordered that the plaintiffs' claim for injunctive relief and damages is denied and judgment is hereby entered in favor of the defendants, Paid Prescription, Inc., and Frank Beal, and against the plaintiffs, together with costs.