Mr. Marlin W. Johnston Commissioner Texas Department of Human Services P.O. Box 2960 Austin, Texas 78769
Re: Validity of a pilot program under which the Department of Human Services would provide prescription drugs to eligible Medicaid recipients
Dear Mr. Johnston:
You ask whether a proposed change in the Medicaid Vendor Drug Program of the Texas Department of Human Services would violate certain federal anti-trust laws. You indicate that, under current policy, Medicaid recipients may receive a number of free prescriptions per month. The department reimburses the providers of prescriptions for the cost of the prescriptions and pays the providers a dispensing fee. Under the proposed change, the department would contract with private distributors who would access and maintain a supply of frequently-prescribed products and would provide pharmacies with item-for-item replacements for products dispensed to Medicaid recipients. The department would continue to pay the pharmacies a dispensing fee. You indicate that the advantage sought by the proposal lies in the lower drug prices available under direct state contracts as opposed to the higher prices usually paid by the retail pharmacies and reimbursed by the state. The wholesale suppliers allege that the state would be illegally supplanting them in the market. It has been suggested that the proposed change would violate the federal anti-trust laws.
Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., establishes the program, known as "Medicaid," which provides medical assistance to individuals who lack sufficient economic resources to meet the cost of necessary medical services. Medicaid is a federal matching-fund program administered in conjunction with participating states. The states channel federal funds and state funds through appropriate state agencies to the providers of medical services, including pharmacies. The amount of payments to providers for various services is largely within the discretion of the state subject to the limits established in the Social Security Act and in regulations promulgated under the act. Ostrow Pharmacies, Inc. v. Beal, 394 F. Supp. 22, 25
(E.D.Pa. 1975). Medicaid programs for drug distributions similar to the program proposed in your request letter have been upheld. See, e.g., Ostrow Pharmacies, Inc., supra. At issue in most cases is the compliance of the state program with the Social Security Act and its attendant regulations. Id. The effect of federal anti-trust laws on these Medicaid drug distribution programs, however, has not been addressed.
Subsections (a) and (f) of section 2 of the Clayton Act,38 Stat. 730, c. 323, § 2 (1914), as amended by the Robinson-Patman Act,49 Stat. 1526, c. 592, § 1 (1936) (15 U.S.C. § 13(a) and 13(f)), provide:
 (a) It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce . . . and where the effect of such discrimination may be substantially to lessen competition. . . .
. . . .
 (f) It shall be unlawful for any person engaged in commerce, in the course of such commerce, knowingly to induce or receive a discrimination in price which is prohibited by this section.
In Jefferson County Pharmaceutical Association, Inc. v. Abbott Laboratories, 460 U.S. 150 (1983), the United States Supreme Court held that sales to and purchases by a state and its agencies are not immune as a matter of law from the sanctions of subsections (a) and (f) of section 2. The issue in Jefferson County, however, was narrow. The Court expressly limited its decision to state purchases made for the purpose of competing, with price advantages, against private enterprise in the retail market. 460 U.S. at 154.
The Court emphasized that its decision did not reach state purchases for use in "traditional governmental functions." Id. Further, the Court stated:
 Special solicitude for the plight of indigents is a traditional concern of state and local governments. If, in special circumstances, sales were made by a State to a class of indigents, the question presented, that we need not decide, would be whether such sales are `in competition' with private enterprise. The District Court correctly assumed that the private and state pharmacies in this case are `competing pharmacies.' 656 F.2d, at 98. . . .
460 U.S. at 154, n. 7. Because your request involves distributions of drug prescriptions to Medicaid recipients, the issue at hand is whether such distributions are "in competition" with private enterprise.
The purpose of the department's Medicaid Vendor Drug Program is to enable the state to provide medical assistance to needy individuals and to enable the state to obtain all benefits for those persons authorized by federal law. See Hum.Res. Code § 32.001 et seq. The federal anti-trust sanctions of subsections (a) and (f) of section 2 prohibit state action or state-created conditions which tend to foreclose the access of competing sellers to all or part of the market supplied by the state. But in the instant case, because the state is providing free prescriptions to Medicaid recipients, competing sellers seek the money held by the real buyer — the state. No one contends that competing sellers wish to shoulder the burden of supplying free medication to indigents. Distributions under the department's proposed change in the Medicaid Vendor Drug Program are therefore not "in competition" with private enterprise. Consequently, the proposed change would not violate subsections (a) and (f) of section 2 of the Clayton Act, supra, as amended by the Robinson-Patman Act, supra.
As indicated at the onset of this opinion, challenges to programs such as the one you propose usually focus on compliance with the Social Security Act and its attendant regulations. You do not indicate whether you anticipate a change in the number of retail pharmacies which distribute drugs to Medicaid recipients. The change would affect primarily the wholesale suppliers. It is therefore unnecessary to decide whether the proposed change would impair the Medicaid recipients' federal and state statutory right to choose their providers of medical services. See42 U.S.C. § 1396a(a)(23); 42 C.F.R. § 447.204; Hum.Res. Code § 32.027(a).
Moreover, a challenge based on loss of access can be sustained only if a state's dispensing fee structure actually fails to enlist enough retail providers to give Medicaid recipients reasonable access. DeGregorio v. O'Bannon, 500 F. Supp. 541,547-50; see O'Bannon v. Town Court Nursing Center, 447 U.S. 773
(1980). Whether reimbursement rates for dispensing drugs under a Medicaid program are so low that they cause participating pharmacists to eventually drop out of the program, thereby causing loss of reasonable services to Medicaid recipients is a question of fact. Pharmacists Society of Milwaukee County, Inc. v. Wisconsin Department of Health and Social Services,79 F.R.D. 405, 411-12 (E.D.Wisc. 1978); see also California Association of Bioanalysts v. Rank, 577 F. Supp. 1342, 1359-60 (C.D.Cal. 1983). Apart from the fact that this long range effect can only be determined over a period of time, the opinion process established for this office by article 4399, V.T.C.S., does not encompass fact-finding.
 SUMMARY
A proposed change in the Medicaid Vendor Drug Program of the Texas Department of Human Services under which the department would purchase certain drug products for free distribution to Medicaid recipients and pay a distribution fee to pharmacies rather than purchasing the drug products from the retail pharmacies, would not be in competition with private enterprise. Consequently, the proposed program would not violate subsections (a) and (f) of section 2 of the Clayton Act, 38 Stat. 730, as amended by the Robinson-Patman Act, 49 Stat. 1526
(15 U.S.C. § 13(a) and 13(f)).
Very truly yours,
 Jim Mattox Attorney General of Texas
 Jack Hightower First Assistant Attorney General
 Mary Keller Executive Assistant Attorney General
 Rick Gilpin Chairman, Opinion Committee
 Prepared by Jennifer Riggs Assistant Attorney General