No. 46,696

Ivan E. Rhodes, et al., *Appellees,* vs. Robert C. Harder, State Director of Social Welfare, et al., *Appellants.*

(508 P. 2d 959)

Opinion filed April 7, 1973.

*Woody D. Smith,* of Topeka, argued the cause, and *Charles V. Hamm* and *J. J. B. Wigglesworth,* of Topeka, were with him on the brief for appellants.

*Wm. Tinker,* of McDonald, Tinker, Skaer, Quinn and Herrington, of Wichita, argued the cause and *Norman I. Cooley* of the same firm was with him on the brief for appellees.

The opinion of the court was delivered by

FATZER, C. J.: This action was filed January 30, 1970, pursuant to K. S. A. 77-434, prescribing the remedy of declaratory judgment with respect to the validity, construction, or application of any regulation adopted by a state administrative agency. The plaintiffs were Ivan E. Rhodes and thirteen other regularly licensed doctors of medicine who were all residents of Sedgwick County and who practiced the profession of medicine in that county.

The action sought a declaratory judgment that certain administrative actions taken by the defendants, Robert E. Harder, State Director of Social Welfare (director), the State Department of Social Welfare (department), and the members of the State Board of Social Welfare (board), prorating charges for medical and professional services rendered to eligible welfare recipients, exceeded the defendants' statutory authority and adversely affected the plaintiffs and the fundamental policies upon which the Kansas state program of Medical Assistance is based. The plaintiffs have not asked for a recovery of money, although monetary damages have resulted; neither have they asserted their prayer for injunctive relief.

In 1965 Congress amended the Social Security Act by enacting "Title XIX" to provide medical assistance grants to any state wishing to provide medical care to its needy citizens. The program is commonly referred to as "Medicaid." Any state desiring to operate a medical assistance program under Title XIX was required to have enabling welfare legislation and to develop and submit by administrative action a "state plan" to the secretary of Health, Education and Welfare (HEW) for approval. If the secretary determined the state plan complied with the requirements outlined by Congress for federal funding of the program, he was authorized to approve the plan. In addition, the participating state was required to show its plan complied with regulations promulgated by the secretary published in the "Handbook of Public Assistance Administration, Supplement D" (Supplement D).

In 1937 Kansas enacted the Social Welfare Act. (K. S. A. 39-701 et seq.) Pursuant to its provisions and on May 25, 1967, the director developed and submitted to HEW a proposed state plan for medical aid assistance, which was subsequently approved by the secretary. In addition to the statute and the state plan, the director and the board promulgated certain administrative regulations relating to

the Title XIX program which are published in Kansas Administrative Regulations (K. A. R.) 30-1-1 *et seq.*

As indicated, the sources of law involved in the question presented under the Kansas state plan for medical assistance are the Act of Congress (42 U. S. C. A. § 1396a *et seq.*), the federal regulations contained in Supplement D, the Kansas Social Welfare Act, the Kansas state plan, and administrative regulations supplemental to the state plan promulgated by the director and the board who are responsible for carrying out the Congressional and state legislative welfare policies.

The administrative action forming the basis for this declaratory judgment action is that on December 31, 1969, and effective January 1, 1970, the director and the board ordered that the regular charges of certain providers of medical services to qualified recipients under the state plan be reduced or discounted automatically by 25 percent. The "order" or "directive" was under the signature of Robert C. Harder, the director, and purported to be authorized by K. A. R. 30-5-29. The plaintiffs contended the administrative order of December 31, 1969, effective January 1, 1970, directly controvenes the provisions of K. S. A. 1969 Supp. 39-708 ($x$) to the effect that providers of medical assistance shall receive their "reasonable, usual and customary charges" for services rendered to qualified recipients.

The defendants filed a motion to dismiss the action upon the grounds of improper venue and lack of jurisdiction which challenged the right of the plaintiffs to bring this action under Section 77-434. The motion was overruled.

Thereafter, the defendants answered, and admitted they were proper parties-defendant as the director and board and the department; that they were acting in an official capacity at all times; that the plaintiffs were regularly licensed doctors of medicine who resided in and practiced the profession of medicine in Sedgwick County; that the plaintiffs and all other practitioners who participated in and were providers of services under the Kansas medical assistance program were in the class described and referred to in Section 39-708 ($x$); that the director and the board were required by said statute to assure those practitioners who provided services under Title XIX and the Kansas medical program shall be paid the reasonable, usual and customary charges for such services; that the reasonable, usual and customary charges for such professional services were those charges which have been determined in accord-

ance with payment schedules for such services which are incorporated into the state plan and approved by the secretary of HEW. Further, that the payment schedules in said plan were in effect on January 1, 1970, and were based upon the legislatively imposed standard of "reasonable, usual, and customary charges." The defendants further admitted the plaintiffs in reliance upon the terms of the state plan and Section 39-708 (x), have participated in said medical program and are currently participating therein and were providing medical services for eligible recipients when the action was filed.

The defendants further admitted that the 25 percent discount or proration applicable to the plaintiffs and certain provider groups, which discount or proration is the subject of this action, was determined and applied simply by automatically deducting 25 percent from any voucher submitted by a physician based upon the statutory standard of "reasonable, usual, and customary charges" for such providers as previously established in the state plan and as explicitly set forth in the payment schedule. In fact, the directive or order dated December 31, 1969, states that the 25 percent proration schedule is to be applied to "the *regular* charges for services" rendered after January 1, 1970.

The district court sustained the plaintiffs' motion for summary judgment and thereafter overruled the defendants' motion for a new trial and for an order amending the judgment rendered therein. The defendants perfected this appeal.

The appellants contend the district court erred in sustaining the appellees' motion for summary judgment declaring K. A. R. 30-5-29 void as contrary to the provisions of K. S. A. 1969 Supp. 39-708 (x) and concluding administrative action taken pursuant to the regulation to be void as contrary to law.

As preliminary to a consideration of substantive issues, we turn to procedural issues raised by the appellants.

As indicated, this action was commenced to determine the validity and application of a state regulation. The provisions of K. S. A. 77-434 relating to declaratory relief concerning administrative regulations established certain procedural steps to be followed in instituting the action. The statute reads:

"The validity, construction or application of any regulation may be determined by an action for declaratory judgment thereon *addressed to the district court of the county in which the plaintiff resides or has a principal place of business,* or in the district court of Shawnee county, when it is alleged that the

regulation or its threatened application interferes with or impairs or threatens to interfere with or impair the legal interest, rights, or privileges of the plaintiff. The agency shall be made a party to the action. *The declaratory judgment may not be rendered until the plaintiff has first requested the agency to pass upon the validity of the regulation in question.* The court shall declare the rule invalid if it finds that it violates constitutional or statutory provisions, or exceeds the statutory authority of the agency, or was adopted without substantial compliance with statutory rule-making procedures. [L. 1965, ch. 506, § 20; June 30.]" (Emphasis supplied.)

The appellants first contend the proper venue of the action was in the district court of Shawnee County. The point is not well taken. The record clearly indicates the appellees were all residents of Sedgwick County or had their principal place of business within that county. Under the facts and circumstances, and from the language of the statute, the action was properly commenced in the district court of Sedgwick County.

The appellants next assert the appellees did not request the department to pass upon the validity of the challenged regulation as a condition to instituting the action, and that it should have been dismissed. The language of Section 77-434 does not compel such a result. Its provisions do not state that *no action may be brought* against a state agency unless the administrative body has *first* passed on the validity of the regulation in question. Rather, it states "the *declaratory judgment* may not be *rendered* until *the plaintiff* has first requested the agency to pass upon the validity of the regulation in question." (Emphasis supplied.) The requirement makes no mention of an allegation in the petition that the agency had been requested to rule on the validity of the challenged regulation, nor is there any inference that an agency adjudication on the questioned regulation is a condition precedent to the filing of an action for declaration relief. Moreover, the phrase, *"the plaintiff* has first requested the agency" (emphasis supplied), clearly indicates the request may be made after the action is filed.

The record indicates the appellees made written request on October 12, 1970, to the director and the board to construe the validity of K. A. R. 30-5-29. The appellants responded by letter dated October 22, 1970, that the challenged regulation was not unconstitutional; did not exceed statutory authority, nor was it in violation of rule-making procedures of K. S. A. 77-415 through 77-434, as amended. The judgment in this case was entered on July 26, 1971. This court has concluded the declaratory judgment

was rendered subsequent to agency adjudication of the validity of K. A. R. 30-5-29, and holds there is no procedural infirmity in the appellees' case in this regard.

The appellants next contend the district court erred in failing to make findings with respect to the appellees' allegation they represented a class, pursuant to K. S. A. 60-233, of providers of medical and professional services under the Kansas Medical Assistance Program. At oral argument, counsel for the appellees stated he represented only the named plaintiffs and represented no one else in the action. We have concluded therefore that no class action is presented regardless of the allegation in the petition to that effect.

Having disposed of the appellants' contentions of procedural errors, we now turn to the substantive issues presented.

The question to be decided is whether K. A. R. 30-5-29 contravenes the provisions of K. S. A. 1969 Supp. 39-708 ($x$). It follows that if the challenged regulation is void, any administrative action taken pursuant thereto is likewise void. The regulation in question (K. A. R. 30-5-29) reads:

"PROVIDERS OF SERVICES; PAYMENTS; DETERMINATION. All payments to all providers of services under medical assistance are subject to the limitations of funds budgeted for the medical assistance program. Should funds for each fiscal year prove inadequate to meet all costs on the basis of fees and charges adopted, payment to providers will be made on a proration or discount basis. The provider groups to be prorated and the method and percentage of proration and the time at which it must be applied will be determined by the department of social welfare. (Authorized by K. S. A. 1967 Supp. 39-708, effective Jan. 1, 1967; amended Jan. 1, 1968; amended Dec. 4, 1969.)"

(Amended January 1, 1971—changes not material herein.)

Section 39-708 ($x$) was in effect when this action was filed, and reads:

"The state board shall take such action as may be necessary to assure that licensed practitioners within the scope of their practice as defined by state law who provide professional services under the provisions of the federal social security act shall be paid their reasonable, usual and customary charges. Payment for other medical assistance under the provisions of the federal social security act shall be the reasonable, usual and customary charges: *Provided, however,* That if such payments are otherwise limited by federal law, such payments shall be as near the reasonable, usual and customary charges as may be permitted by federal law. [K. S. A. 39-708; L. 1965, ch. 286, § 1; L. 1967, ch. 245, § 2; L. 1969, ch. 226, § 2; July 1.]"

(L. 1969, Ch. 226, § 2, since amended.)

On December 31, 1969, the director ordered the regular charges of certain providers of medical services under the state plan re-

*duced or discounted* automatically by 25 percent, pursuant to the authority in K. A. R. 30-5-29. That communication reads in pertinent part:

"Re: Proration of Payment for
Certain Services and
Supplies

"To: All Providers of Services under the Kansas Medical Assistance Program, Title XIX
Chairmen County Boards of Social Welfare
County Welfare Directors

"It now appears reasonably certain that costs of the Medical Assistance program for the January to June 1970 period will exceed the funds available. Our best projection is a deficit for the period of $2,500,000. Therefore, in accordance with regulation 30-5-29 as amended December 4, 1969, the State Board of Social Welfare has directed that payments for medical services be prorated by applying to the regular charges for services rendered after January 1, 1970, the following discounts:

"Drugs                                    Eliminate the 50¢ fee added to
                                          prescriptions having an acqui-
                                          sition cost to the pharmacist of
                                          $5.00 or less

"Physicians, Dentists,                    25%
Osteopathic Physicians,
Podiatrists and Chiro-
practors."

The appellants contend the action taken in prorating fees for medical and professional services is not unlawful. First, they assert the proration was authorized by the Associate Regional Commissioner for Medical Services of HEW. The point is not well taken—the contention would seem to be an afterthought. Under the facts and circumstances of this case, a letter from the regional commissioner, while admittedly an interpretative rule, would have no effect upon a state law enacted by the legislature controlling the manner in which medical and professional services are compensated under the existing Kansas state plan.

Second, that K. S. A. 1969 Supp. 39-708 when read in its entirety authorizes proration administratively if the funds are not available to maintain present services at the fee schedule rates. In support of the contention, the appellants construe subsections (s) and (x) as authorizing the board to prorate payments made to medical vendors for medical and professional services rendered. The appellees, on the contrary, assert that any administrative action is limited by applicable law which clearly indicates that once a fee

schedule is adopted by the state agency and approved by the secretary of HEW, that fee schedule constitutes the administrative action authorized by the state statute, and charges for medical and professional services consistent with that approved schedule cannot be prorated, upwards or downwards, without recertifying the state plan by federal approval of the secretary.

Pursuant to 42 U. S. C. A. 1302, the secretary of HEW is authorized to issue regulations concerning public health and welfare. The secretary has promulgated rules relating to the Title XIX program which are published by the secretary in the "Handbook of Public Assistance Administration Supplement D" heretofore noted. Regulations affecting payment for medical and professional services are set out in Sections D-5300 through D-5340. These various sections establish minimum standards for inclusion in state plans relating to medical and professional services. Section D-5320 requires the state plan to establish fee schedules which are designed to enlist participation of medical providers in the Medicaid program, and limits participation to those providers of medical and professional services who accept as payment in full the amounts paid in accordance with the adopted fee structures.

D-5340 contains the secretary's interpretation of regulations relating to fee structures (schedules) for medical and professional services, and reads in pertinent part:

"The requirement for fee structures permits a variety of means which may be used in determining payments to providers of services other than hospitals. An underlying assumption is that adequate financing is available to pay the costs of the medical and remedial care and services included in the plan. Among the means which may be used in relation to practitioners' services are usual and customary charges; negotiated fee schedules which allow fees equivalent or similar to those paid on behalf of individuals in similar financial circumstances by organizations that pay for substantial amounts of medical and remedial care and services . . ."

It may be said Supplement D essentially provides that a state may adopt one of several alternative types of payment structures for payment to medical providers under that state's plan. Those alternative types of payment structures recognized by HEW which a state may adopt are: (1) reasonable, usual and customary, or prevailing charges; or (2) fixed fee schedules of maximum allowances; or, (3) payment structures based on relative value studies.

Within this context, the legislature chose by explicit statutory language to base its payment structure to providers of medical

services under its Medicaid program upon the first-mentioned basis stated above, which was recognized and approved by the secretary of HEW. The language of 39-708 ($x$) casts the establishment of such payment structure in the form of an affirmative duty incumbent upon the appellants by stating that "the state board shall take such action as may be necessary to assure" that medical providers "shall be paid their reasonable, usual and customary charges." As indicated, the fee schedule promulgated in the Kansas state plan contains a list of fees *which have been established as the "reasonable, usual, and customary charges"* for each service listed. Those fee schedules were attached to the state plan when it was approved by the secretary of HEW, and, insofar as it relates to this case, reads in part:

"4. The following is a description of the methods that will be used to assure that the medical and remedial care and services are of high quality, and a description of the standards established by the State to assure high quality care:"

\* \* \* \* \*

"Fee schedules, for payment of medical services will relate to 'reasonable, usual and customary charges.' "

\* \* \* \* \*

"C. *Payment for Medical and Remedial Care and Services* (D-5300)

"1. Fee structures will be established which are designed to enlist participation of a sufficient number of providers of services in the program so that eligible persons can receive the medical care and services included in the plan at least to the extent these are available to the general population.

"2. Payments will be made only to medical vendors who sign agreements with the state under which the vendor agrees

"($a$) to accept the payment in full, the amounts paid in accordance with the payment structures of the state:"

\* \* \* \* \*

"6. . . .

"*Any change in payment structure for individual practitioner services will not become operative until such change has been incorporated in the State plan by an amendment submitted to, and approved by the Secretary.*

"7. *Payment structures regardless of type of individual practitioner services are based on usual, customary, and reasonable or prevailing charges.* Kansas Blue Shield developed what is known as the prevailing fee plan. The primary principle of this plan is that it pays usual and reasonable charges in full as long as these charges do not exceed a basic maximum for the state.

"a. Definitions of terms usual, reasonable and customary:

"*Usual*—The charge one practitioner usually makes for a specific service or procedure.

"*Reasonable*—Is the charge for the service performed as measured by its relationship to all the other services performed. (Relative Values)

"*Customary*—The charge which is in normal agreement with the charges that other vendors of equal skills in the community make for the same service. (Prevailing)" (Emphasis supplied.)

\* \* \* \* \*

"8. The following is a description of the policy and methods used in establishing payment rates for each type of care and service other than in-patient hospital service included in the State Plan. In no instance will the amount of payment under the plan exceed charges made to the general public for identical services.

"a. *Physicians (Doctors of Medicine and Osteopathy) Dentists, Chiropractors, Podiatrists, Optometrists,* and *Opticians*—Payment of these professional groups is on the basis of reasonable, usual, and customary fees. Established maximums are to be found in Appendices A, B, C, D, and E for each specific professional charge, according to the specialty. The Appendix compilations are located at the end of the State Plan."

Thus, the state plan adopts by reference the fee schedules attached thereto *and provides that any amendments to the established schedules, or any change in the payment structure to medical providers, shall not become operative until incorporated into the state plan and approved by the secretary of HEW.* (See "6" quoted above.) This fact alone should end this lawsuit because there is nothing in the record that suggests or intimates the appellants made any effort or took any steps to have regulation 30-5-29 incorporated into the state plan and approved by the secretary of HEW pursuant to Title XIX and Supplement D. That being the case, the regulation would be totally ineffective and unenforceable for the reason it never became a part of the state plan authorizing payment for medical services rendered to eligible welfare recipients.

Be that as it may, we are of the opinion the district court did not err in holding that K. A. R. 30-5-29 and the director's letter or order of December 31, 1969, went beyond and were in conflict with the legislative authorization of 39-708 (*x*) and that they were void.

We are of the opinion regulation 30-5-29 and the director's letter of December 31, 1969, are invalid under decisions of this court. *Willcott v. Murphy,* 204 Kan. 640, 465 P. 2d 959; *State, ex rel., v. Columbia Pictures Corporation,* 197 Kan. 448, 417 P. 2d 255.) In *Willcott* it was held that regulations adopted by the State Director of Alcoholic Beverage Control, relating to the storage and sale of beer by retail liquor dealers, were void and it was held:

"The power of an administrative agency to adopt rules and regulations is administrative in nature, not legislative, and to be valid administrative regulations must be within the authority conferred. An administrative regulation which goes beyond or conflicts with legislative authorization is void." (Syl. ¶ 1.)

Applying the facts of the case at bar to the language used in *Columbia Pictures,* we quote the following:

"Are the rules and regulations adopted by the Board on [December 4, 1969], authorized by the statute? We think not. It will be observed the scope of the power granted in [39-708 ($x$)] deals with the power of the Board to make and adopt reasonable rules and regulations deemed necessary, not inconsistent with the laws of this state, for enforcing the provisions of the Act. The power granted is not the power to make rules and regulations which supersede existing laws enacted by the constituted lawmaking body, nor amend any law enacted for the purpose of [payment of medical services]. The authority to declare the public policy of this state is vested in the legislature, not an administrative board, such as the Board of [Social Welfare] . . ."

\* \* \* \* \*

"We conclude that, as applied to this case, the rules and regulations adopted by the Board of [Social Welfare] were unauthorized for the reason they were in direct contravention of the express terms of the Act." (l. c. 454, 455.)

The above quote applies with great force to this case. Regulation 30-5-29, and the manner in which the appellants applied it by the letter of December 31, 1969, goes beyond any valid administrative or supervisory power vested in the appellants by the ligislature. Clearly, the appellants have no power to repudiate by regulation 30-5-29 its duty "to assure" that providers of medical services shall receive their reasonable, usual and customary charges as mandated by 39-708 ($x$). The fact the appellants used the regulation in such a way as to create what purported to be a new standard for payment of providers' charges by reducing them 25 percent, is "out of harmony with" and "alters" the statute—i. e., the source of legislative power. Particularly this is true when there is nothing in the record to show that the appellants made any effort to have 30-5-29 incorporated in the state plan and secure its approval by the secretary of HEW. The adoption of 30-5-29 likewise attempts to "legislate" by administrative action a substitute standard in place of the legislative standard for payment of authorized charges of providers, which charges had theretofore been enumerated in the state plan and recognized as "reasonable, usual and customary" pursuant to state and federal law.

Under the issues presented and the facts and circumstances of this case, this court need not consider whether the appellees have an implied contract with the department. But see the unreported case of the United States District Court for the District of Kansas, entitled *Seneca Nursing Home, et al., v. The Kansas State Board of Social Welfare, et al.,* civil action No. T-4779. Suffice it to say the

state plan adopts a fee schedule which establishes the reasonable, usual and customary charges required by 39-708 $(x)$, and absent any statutory authority to prorate by directive, the appellants have no authority to adopt a regulation which purports to do so, nor does any administrative authority exist by virtue of the provisions of 39-708 to take the action asserted by the appellants' letter of December 31, 1969.

This court holds the provisions of 30-5-29 and the administrative action taken thereunder by the board directing proration of fees subsequent to December 31, 1969, to be beyond the authority of 39-708 $(x)$ requiring fees for medical and professional services to be the reasonable, usual, and customary charges. (2 Am. Jur. 2d, Administrative Law, § 289, p. 118; *State, ex rel., v. Columbia Pictures Corporation,* supra; *Willcott v. Murphy,* supra; *Grauer v. Director of Revenue,* 193 Kan. 605, 396 P. 2d 260; *Stanley v. United Iron Works Co.,* 160 Kan. 243, 160 P. 708; Ryan and Carpenter, Dubious Doctrines in Administrative Law, with Federal-Kansas Emphasis, 11 Washburn L. J. 351, 356 [1972].)

In passing, we note that K. S. A. 1969 Supp. 39-708 was amended by the legislature in 1970 (L. 1970, Ch. 167, § 1.) The language of subsection $(x)$ was retained in its 1969 form. Subsequently, in the 1971 session, K. S. A. 1970 Supp. 39-708 was amended (L. 1971, Ch. 153, § 1), and subsection $(x)$ was substantially changed by removing the words "usual and customary" from the first sentence. However, in 1972, the legislature amended 39-708 and inserted the words "usual and customary" once again into subsection $(x)$.
The subsection now reads:

"$(x)$ The state board shall take such action as may be necessary to assure that licensed practitioners within the scope of their practice as defined by state law who provide professional services under the provisions of the federal social security act shall be paid their reasonable, *usual and customary* charges. Payment for other medical assistance under the provisions of the federal social security act shall be the reasonable, usual and customary charges: *Provided, however,* That if such payments are otherwise limited by federal law, such payments shall be as near the reasonable, usual and customary charges as may be permitted by federal law." (Emphasis supplied.)

In light of the subsequent legislative action concerning K. S. A. 1972 Supp. 39-708 $(x)$, it must be concluded the present provisions of 30-5-29 are beyond the scope of administrative authority delegated to the department, and are void.

Finally, the appellants contend the district court erred in granting

summary judgment because there were material facts still in dispute. The appellants' proffer of evidence at the hearing on the motion for a new trial related to budgetary limitations placed upon the department in 1970, and the need for proration to insure that all services provided by the department would be continued. We note the appellants concede the existence of the state plan and the incorporated fee schedules. Placing the state plan in harmony with the federal stautory and regulatory requirements and the state statutory requirements, we have concluded the regulation and the administrative action taken to be without any legal authority as a matter of law. That being the case, the existence of fiscal problems would have no bearing upon our decision, and we hold the district court did not err in entering summary judgment in this case.

The judgment is affirmed.