NEW JERSEY FEDERATION OF PHYSICIANS AND DENTISTS, A NON-PROFIT CORPORATION OF THE STATE OF NEW JERSEY, APPELLANT, v. ANN KLEIN, COMMISSIONER OF INSTITUTIONS AND AGENCIES AND NEW JERSEY DEPARTMENT OF INSTITUTIONS AND AGENCIES, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted September 21, 1976—Decided November 16, 1976.

Before Judges MATTHEWS, SEIDMAN and HORN.

*Messrs. Popovitch* and *Popovitch,* attorneys for appellant (*Mr. Frederick E. Popovitch,* of counsel and on the brief).

*Mr. William F. Hyland,* Attorney General of New Jersey, attorney for respondents (*Mr. Stephen Skillman,* Assistant Attorney General, of counsel; *Mr. Michael S. Bokar,* Deputy Attorney General, on the brief).

PER CURIAM. ▇ The New Jersey Federation of Physicians and Dentists, which describes itself as a "duly constituted Labor Organization affiliated with the American Federation of Physicians and Dentists," appeals under *R.* 2:2–3(a)(2) from a regulation adopted by the Commissioner of Institutions and Agencies on August 1, 1975 (see 7 *N. J. R.* 421(a)), substantially as proposed in a notice published July 10, 1975 (see 7 *N. J. R.* 317(b)). The regula-

tion, one of a series dealing with revisions of fees and services under the Medicaid program, effected a temporary fee reduction for certain providers of medical and related services:

Because of the projected budget deficit in the New Jersey Health Services (Medicaid) Program, a reduction of ten per cent in certain provider's reimbursement will become effective for all services performed on or after August 1, 1975. This will apply to all physicians, dentists, optometrists, opticians, podiatrists, chiropractors, psychologists, prosthetic and orthotic suppliers, medical suppliers, hearing aid dealers and transportation providers.

Appellant contends that the regulation in question is invalid because (1) the Commissioner made no effort nor took any steps to have the regulation in question incorporated into the State Plan and approved by the Secretary of Health, Education and Welfare; (2) it violates the intent of the Medical Assistance Program and therefore is beyond the power of the Commissioner; (3) it violates the requirements of the Social Security Act and the federal regulations thereunder, and (4) it is unreasonable, capricious and arbitrary, and adversely affects the fundamental policies on which the state program of medical assistance is based.

We shall address ourselves later to the issue of whether the regulation under review required prior approval by the Secretary of Health, Education and Welfare. As for the remaining contentions, we find no substance in the arguments advanced that the regulation violates the intent of or does not comply with federal and state enabling acts and regulations, or is unreasonable, capricious and arbitrary.

Subchapter XIX of the Social Security Act, 42 *U. S. C. A.* § 1396, provides for the establishment of federally-assisted, state-administered programs of medical assistance to needy persons. Participating states are required to submit to the United States Department of Health, Education and Welfare their Medicaid plans for the mandated medical services, 42 *U. S. C. A.* § 1396a(a)(13), and for such optional services as may be provided, 42 *U. S. C. A.* § 1396a(a)(10)(C). The

services are to be provided "as far as practicable under the conditions in [each] State * * *," 42 *U. S. C. A.* § 1396, and the "medical assistance" authorized by the act is defined as "payment of part or all of the cost" of the included mandatory or optional services, 42 *U. S. C. A.* § 1396d(a). See *N. J. Pharmaceutical Ass'n. v. Klein,* 140 *N. J. Super.* 16, 20 (App. Div. 1976).

Participation by this State in the program was authorized by the enactment of the New Jersey Medical Assistance and Health Services Act, *N J. S. A.* 30:4D–1 *et seq.,* which designated the Department of Institutions and Agencies as the single state agency to administer its provisions. The stated purpose of the act was to provide medical assistance, *insofar as practicable,* on behalf of persons whose resources were determined to be inadequate to enable them to secure quality medical care at their own expense, and to enable the State, *within the limits of funds available for any fiscal year for such purposes,* to obtain all benefits for medical assistance provided by the Social Security Act. *N. J. S. A.* 30:4D–2.

The act empowers the Commissioner to issue, or cause to be issued through the Division of Medical Assistance and Health Services,

> * * * [A]ll necessary rules and regulations and administrative orders, and to do or cause to be done all other acts and things necessary to secure for the State of New Jersey the maximum Federal participation that is available with respect to a program of medical assistance, *consistent with fiscal responsibility and within the limits of funds available for any fiscal year, and to the extent authorized by the medical assistance program plan;* to adopt fee schedules with regard to medical assistance benefits and otherwise to accomplish the purposes of this act * * * * [Emphasis supplied]

While the fee schedule for physicians in existence on August 1, 1975 is not disclosed in the record, it is evident that one had been established by the Department pursuant to the provisions of the applicable statutes and the state plan. It is also undisputed that the State appropriation for

the Medicaid program for fiscal year 1975–1976 necessitated the elimination of more than $50,000,000 in both state and federal funds from prior projected medical expenditures. See *N. J. Pharmaceutical Ass'n. v. Klein, supra* at 21.

There can be no doubt whatever that the rule under review was within the power of the Commissioner to promulgate. The stated purpose of the 10% reduction in Medicaid reimbursement to the affected providers was to meet a budgetary crisis. Appellant does not contend that more funds were available for use in the Medicaid program than those claimed by the ·Commissioner. The action proposed to be taken was clearly for the purpose of bringing expenditures within the limits of available funds.

Appellant asserts, nevertheless, that the regulation violates the intent of the Social Security Act because it is a "foregone conclusion" that the reduction in fees will result in the mass withdrawal of medical practitioners from the program and, as a consequence, the quality and availability of medical care will fall below that required by federal statutes. The regulation is also assailed as being arbitrary, capricious and unreasonable in that the Commissioner failed to show a reasonable basis for the reduction and that the regulation discriminates against some providers.

The short answer to these assertions is that the regulation in question is entitled to the benefit of "the customary rebuttable presumption of validity and regularity afforded to administrative regulations generally," *Motyka v. McCorkle,* 58 *N. J.* 165, 181 (1971), and the burden of establishing otherwise is on the one challenging it. *N. J. Pharmaceutical Ass'n v. Klein supra* at 23.

Although appellant argued at the hearing below that the reduction in fees would curtail the availability of medical services and decrease the number of available providers, these were largely expressions of fears which were neither statistically supported nor otherwise documented. The record of the hearing does not justify the conclusion that the reduction may reasonably be expected to result in an insufficient number

of physicians who would provide the needed medical services, or to affect adversely the quality of such services. *Cf. N. J. Pharmaceutical Ass'n v. Klein, supra* at 26. As for the further contention that the revised fees would be unreasonably low, it is to be noted, first, that the relevant fee schedules were adopted primarily for the benefit of Medicaid recipients, and not for the providers of the services. Moreover, where, as here, the department was obligated to maintain basic programs in the face of a substantial decrease in revenue, the determination to reduce the fees by 10% cannot be considered arbitrary or capricious; and, in light of the further fact that the reduction would amount to less than 70 cents per visit in most instances, it would not appear to be so unreasonable in the existing circumstances as to jeopardize the program, particularly when the alternative would be the curtailing of medical services to those in need of assistance.

The argument that the regulation discriminates against some providers lacks substance and requires no discussion.

█ We turn now to the remaining contention that the regulation is inoperative because of the Commissioner's failure to follow the procedure set forth in Attachment 4.19B of the State Plan:

> Any significant increase, decrease or modification in this payment structure will not become operative until such change has been incorporated into this plan as an amendment to and approved by the Secretary, Department of Health, Education and Welfare, in accordance with applicable regulations.

Appellant relies heavily on *Rhodes v. Harder,* 211 *Kan.* 820, 508 *P.* 2d 959 (Sup. Ct. 1973), mod. on other grounds, 212 *Kan.* 500, 512 *P.* 2d 354 (Sup. Ct. 1973), which involved a comparable provision in the state's Medicaid Plan. However, the requirement there was that *any* amendment to established fee schedules or changes in the payment structure to medical providers would be inoperative until incorporated into the state plan and approved by the Secretary. The key words in the provision applicable here, however, are *"sig-*

*nificant* increase, decrease or modification" (emphasis supplied).

Although the term "significant" is not defined, in the context in which it is used here it should be construed to mean having or likely to have an influence or effect, not upon the income of the providers, but upon the statutory purpose

* * * [to] provide medical assistance, insofar as practicable, on behalf of persons whose resources are determined to be inadequate to enable them to secure quality medical care at their own expense, and to enable the State, within the limits of funds available for any fiscal year for such purposes, to obtain all benefits for medical assistance provided by the Federal Social Security Act * * * * [*N. J. S. A.* 30:4D–2]

The presumption of validity which clothes the rule in question entitles us to infer that the Commissioner was satisfied that the temporary 10% reduction, though regrettable, would not have a general adverse effect upon the furnishing of medical services to Medicaid recipients, and therefore was not a "significant" change requiring incorporation into the State Plan and prior approval by the Secretary of the Department of Health, Education and Welfare. Beyond this, as we have already said, appellant failed at the hearing below to carry its burden of demonstrating that the Medicaid program, insofar as it related to medical services, would, in fact, be deleteriously affected.

The regulation under review is affirmed.