No. 61,327

KANSAS COMMISSION ON CIVIL RIGHTS, *Appellant*, v. TOPEKA UNIFIED SCHOOL DISTRICT NO. 501 and GERRY MILLER, *Appellees*.

(755 P.2d 539)

Opinion filed April 29, 1988.

*Brandon L. Myers*, senior legal counsel, of Kansas Commission on Civil Rights, argued the cause and was on the brief for appellant.

*K. Gary Sebelius*, of Eidson, Lewis, Porter & Haynes, of Topeka, argued the cause, and *Catherine A. Walter*, of the same firm, was with him on the brief for appellees.

The opinion of the court was delivered by

LOCKETT, J.: The Kansas Commission on Civil Rights (KCCR) appeals the decision of the Shawnee County District Court that the KCCR has no jurisdiction, under the Kansas Act Against Discrimination, K.S.A. 44-1001 *et seq.*, to investigate complaints of discrimination in public schools. The district court based its decision on *Kansas Commission on Civil Rights v. Howard*, 218 Kan. 248, 544 P.2d 791 (1975). We affirm.

In 1953, the Kansas legislature, exercising the police power of the state for the protection of the public welfare, safety, health, and peace of the people of this state, enacted the Kansas Act Against Discrimination (Act), K.S.A. 44-1001 *et seq.* The legislature recognized that discrimination against individuals *in employment relations, in relation to free and public accommodations, or in housing* by reason of race, religion, color, sex, physical handicap, national origin, or ancestry concerns the state, "since such discrimination threatens not only the rights and privileges of the inhabitants of the state of Kansas, but menaces the institutions and foundations of a free democratic state." It acted "to eliminate and prevent discrimination *in all employ-*

*ment relations,* to eliminate and prevent discrimination, segregation, or separation *in all places of public accommodations* covered by this act, and to eliminate and prevent discrimination, segregation or separation *in housing.*" K.S.A. 44-1001. (Emphasis added.)

The Act conferred specific powers on the commission. K.S.A. 44-1004 provides in part:

"The commission shall have the following functions, powers and duties:

. . . .

"(4) To receive, initiate, investigate, and pass upon complaints alleging discrimination *in employment, public accommodations and housing* because of race, religion, color, sex, physical handicap, national origin or ancestry." (Emphasis added.)

In 1972, the Act was amended by inserting into K.S.A. 44-1002, "Definitions," the following:

"The term 'unlawful discriminatory practice' also means any discrimination against persons in the full and equal use and enjoyment of the services, facilities, privileges and advantages of any institution, department or agency of the state of Kansas or any political subdivision or municipality thereof."

K.S.A. 44-1009(c) was also amended to prohibit discrimination in the equal use and enjoyment of any state governmental services, facilities, privileges, and advantages. The specific power granted by the legislature to the KCCR to investigate complaints alleging discrimination in employment, public accommodations, and housing of K.S.A. 44-1004(4) was not amended.

Prior to September 1985, five black students, who attended Linn Elementary School, filed requests to transfer their enrollment to Avondale East Elementary School. Based on Board Policy No. 8025, § V.C., U.S.D. 501 denied the black students' requests for transfer because they were requesting to be transferred into a school which had a higher minority race percentage than the home attendance area school.

Board Policy No. 8025, § V.C., provides, in part:

"An application for transfer of enrollment will be approved only for (a) a majority race student who requests transfer of enrollment to a school which has a higher minority race percentage than his/her home attendance area school or (b) a minority race student who requests transfer of enrollment to a school which has a lower minority race percentage than his/her home attendance area school."

On September 5, 1985, five complaints were filed with the

Kansas Commission on Civil Rights (KCCR) alleging that Unified School District 501 of Topeka, Kansas, (U.S.D. 501) had denied complainants their request to attend Avondale East Elementary School on the basis of their race and in violation of the Kansas Act Against Discrimination, K.S.A. 44-1009(c)(3), which prohibits discrimination "in places of public accommodation."

The relevant sections of K.S.A. 44-1009(c)(3) provide:

"(c) It shall be an unlawful discriminatory practice:

. . . .

"(3) For any person, as defined herein, to refuse, deny, make a distinction, directly or indirectly, or discriminate in any way against persons because of the race, religion, color, sex, physical handicap, national origin or ancestry of such persons in the full and equal use and enjoyment of the services, facilities, privileges and advantages of any institution, department or agency of the state of Kansas or any political subdivision or municipality thereof."

Each complaint stated in part:

"III. I hereby charge Unified School District #501 and its representatives with a direct violation of the Kansas Act Against Discrimination in that a direct distinction is being made in the offering of services and privileges *in a place of public accommodations* due to my child's race, Black American." (Emphasis supplied.)

Subsequently, the KCCR served five subpoenas duces tecum upon U.S.D. 501 and Mr. Gerry Miller, Custodian of Student Records. U.S.D. 501 then notified the KCCR that it would not voluntarily comply with the subpoenas, contending that the KCCR did not have jurisdiction under the Act to investigate these complaints. The KCCR filed an application and order to enforce subpoena in the district court of Shawnee County pursuant to K.S.A. 44-1004(5). After briefing and oral argument by the parties, the district court denied enforcement of the subpoenas. Citing *Kansas Commission on Civil Rights v. Howard*, the district court held that, as a matter of law, the KCCR had exceeded its power under the Act which limits the KCCR to addressing discrimination only in the areas of employment, housing, and public accommodations. The court rejected the KCCR's position that the alleged discriminatory policies of U.S.D. 501 were matters relating to public accommodation, and restricted the definition of places of public accommodation to places of business open to the general public for business purposes. After denial of its motion to reconsider, the KCCR appealed.

This is the KCCR's second attempt to expand its authority by judicial construction of K.S.A. 44-1009(c)(3) since the 1972 amendment to the Act. The KCCR first attempted to broaden its power in *Howard.* There, the court examined the issue of whether the KCCR had the authority to issue subpoenas to investigate a complaint charging a city police officer with an unlawful discriminatory practice, based on the arrest and the post-arrest treatment of the complainant.

The *Howard* majority initially reasoned that the KCCR's jurisdiction to investigate depends on whether the provisions of the Act apply to the specific area of alleged discriminatory practice. The court noted that K.S.A. 44-1001 mentioned the three areas of coverage (employment, public accommodations, and housing) no less than five times in its statement of policy and purpose. In addition, K.S.A. 44-1004 limited the power and duties of the commission "to receive, initiate, investigate, and pass upon complaints alleging discrimination *in employment, public accommodations and housing* because of race, religion, color, sex, physical handicap, national origin or ancestry." (Emphasis added.) The *Howard* court reasoned that previous decisions construing the Act had also limited the KCCR's jurisdiction to those three areas. See, *e.g., Atchison, T. & S. F. Rly. Co. v. Lopez,* 216 Kan. 108, 113, 531 P.2d 455 (1975); *Atchison, T. & S. F. Rly. Co. v. Commission on Civil Rights,* 215 Kan. 911, 916-17, 529 P.2d 666 (1974); *Jarvis v. Kansas Commission on Civil Rights,* 215 Kan. 902, 903, 528 P.2d 1232 (1974).

The *Howard* majority concluded that KCCR's jurisdiction was clearly confined to the areas of public accommodation, housing, and employment. See *City of Independence v. Kansas Commission on Civil Rights,* 218 Kan. 243, 544 P.2d 799 (1975). The majority rejected the KCCR's argument, the same argument made here, that the 1972 amendment was intended to expand KCCR's jurisdiction, stating:

"Prior to the 1972 amendment, K.S.A. 44-1002(*i*) defined an unlawful discriminatory practice as discrimination or segregation in some twenty-one specific types of business establishment or facility, or in 'a place of public accommodations covered by this act.' The 1972 amendment (L. 1972, ch. 194, § 2) added the following language:

'The term "unlawful discriminatory practice" also means any discrimination against persons in the full and equal use and enjoyment of the services, facilities, privileges and advantages of any institution, department or agency of the state of Kansas or any political subdivision or municipality thereof.'

"By the same act virtually the identical language was also added to K.S.A. 44-1009." 218 Kan. at 252.

The court stated that while it might appear that this language extended the act's coverage to the "services, facilities, privileges and advantages" of a governmental agency in any area of activity, courts are not permitted to consider only a certain isolated part of an act, when determining legislative intent, but are required to consider and construe together all parts thereof *in pari materia.* The court reasoned when the liberal interpretation of one section of an act contravenes the manifest purpose of the legislature, the entire act should be construed according to its spirit and reason, disregarding so far as may be necessary the strict letter of the law, citing *Claflin v. Walsh,* 212 Kan. 1, 8, 509 P.2d 1130 (1973).

Construing the act as a whole, the *Howard* court did not find from the 1972 amendment any legislative intent to extend the scope of the act beyond those three areas which were stated to be the areas of primary legislative concern. The amendment was equally susceptible, in the court's view, of being interpreted as a clarifying measure, designed to make clear that governmental as well as private action was covered in the three areas covered by the act.

In this case, the district court, following *Kansas Commission on Civil Rights v. Sears, Roebuck & Co.,* 216 Kan. 306, 532 P.2d 1263 (1975), and *Howard,* held public schools and school board policies are not matters of "public accommodation," and, therefore, were not within the scope of KCCR investigatory authority authorized by the Act. The district court also noted that both the *Sears* and *Howard* decisions were over ten years old and should the legislature have desired a broader jurisdiction for the KCCR than that defined by the Supreme Court, it has had ample opportunity to amend the Act.

The KCCR concedes that the *Howard* decision restricted its powers and duties to the limitations set out in 44-1004 and that the *Howard* court did not adopt the KCCR's claim of broad

power and duties under K.S.A. 44-1009(c)(3). The KCCR now requests that we expand the power and duties of the commission by determining that the definition of "unlawful discriminatory practice" in K.S.A. 44-1009(c)(3) is a legislative grant of additional jurisdiction. The KCCR urges this court to confine *Howard* to its specific facts, namely to an investigation of discriminatory practices of law enforcement agencies. However, when construing a statute, it is difficult to confine the decision to the specific facts of the case before the court because the decision inherently applies to all subsequent cases brought under the same statute. In *Howard*, this court established a framework under which subsequent cases must be analyzed.

The KCCR also argues there is a distinction between *Howard* and the present case because *Howard* involved alleged discrimination in the carrying out of a "negative, punishing" activity (arrest), while the activity here involves discriminatory denial of a "positive, beneficial" service (education). Even if this distinction were a valid one, it could not be applied absent statutory authority. The Act makes no such distinctions.

The KCCR also attempts to characterize this case as one of "first impression," stating that *Howard* left open the question of whether a discriminatory denial of actual services by a governmental entity is covered by 44-1009(c)(3). This argument is misleading. Under *Howard*, the threshold issue is whether the governmental services were denied in the areas of housing, employment, and public accommodations. Thus, we are required to determine if public schools are places of public accommodation.

We believe that public schools are not places of public accommodation as contemplated by the Act. Places of "public accommodation" are those which are held out as open to the general public and which members of the public generally are invited to patronize and otherwise visit. *Kansas Commission on Civil Rights v. Sears, Roebuck & Co.*, 216 Kan. 306. An examination of K.S.A. 44-1002 also supports the view that the term "public accommodations" refers to businesses open to the general public. Section (h) defines "public accommodations" to include "any person . . . who caters or offers goods, services, facilities and accommodations to the public." Section (i) pro-

vides a nonexclusive list of 21 facilities which the drafters of the statute wished to emphasize as included in the concept of public accommodations. (These include hotels, motels, cabin camps, restaurants, trailer courts, bars, taverns, barbershops, beauty parlors, theaters, skating rinks, bowling alleys, billiard parlors, amusement parks, recreation parks, swimming pools, lakes, gymnasiums, mortuaries, and cemeteries.) The legislative intent appears to be that the term "public accommodations" includes all *businesses* which can reasonably be described as offering goods, services, facilities, and accommodations to the public. If the legislature had intended the public schools to be included within the concept of "public accommodations," they would have specifically so stated. In addition, the inclusion of the word "services" in section (h) can reasonably be construed to mean business and not educational services.

While not dispositive for the purposes of Kansas law, the opinion of the New Mexico Supreme Court in *Human Rights Com'n of N. M. v. Bd of Regents*, 95 N.M. 576, 624 P.2d 518 (1981), cited by defendant, is persuasive on the issue of whether public schools are places of public accommodation. The issue there was whether a state university was a place of public accommodation within the meaning of the New Mexico Human Rights Act, N. M. Stat. Ann. § 28-1-2(H) (1987 Repl.). The relevant portions of the New Mexico Act, similar to our own, provide:

"It is an unlawful discriminatory practice for:

. . . .

"(F) any person in any public accommodation to make a distinction, directly or indirectly, in offering or refusing to offer its services, facilities, accommodations or goods to any individual because of race. . . ." N. M. Stat. Ann. § 28-1-7(F) (1987 Repl.).

" '[P]ublic accommodation' means any establishment that provides or offers its services, facilities, accommodations or goods to the public, but does not include a bona fide private club or other place or establishment which is by its nature and use distinctly private." N. M. Stat. Ann. § 28-1-2(H) (1987 Repl.).

The New Mexico court reasoned:

"The prohibition against discrimination in public accommodations arose from the common law duties of innkeepers and public carriers to provide their services to the public without imposing unreasonable conditions. *See* Avins, *What is a Place of 'Public' Accommodation?*, 52 Marq. L. Rev. 1 (1968). The

United States Supreme Court recognized these common law duties when it stated that '[i]nnkeepers and public carriers, by the laws of all the States, so far as we are aware, are bound, to the extent of their facilities, to furnish proper accommodation to all unobjectionable persons who in good faith apply for them.' *Civil Rights Cases*, 109 U.S. 3, 25, 3 S. Ct. 18, 31, 27 L. Ed. 835 (1883). Early statutes in most states tended to codify the common law by prohibiting discrimination in places of lodging, entertainment and public transportation. *See* Avins, *supra.* Universities were not considered public accommodations under the early statutes." 95 N. M. at 577-78.

Under some circumstances, a school may become a place of public accommodation; for example, when a school sponsors an activity open to the general public. It would then wrongfully discriminate if it limited entrance to the event on the basis of race or sex. However, this is not the case when the alleged discriminatory activity centers on educational policies or access to specific schools.

The KCCR also argues that authority to investigate discrimination in public schools is supported by K.A.R. 21-46-3, which provides:

"Student admission to schools. Student admissions to schools are covered by the provisions of the Kansas act against discrimination."

This argument has no merit. Pursuant to K.S.A. 44-1004(3), the KCCR has the authority to "adopt, promulgate, amend and rescind suitable rules and regulations to carry out the provisions of the [Act]." However, this authority is administrative, not legislative, and to be valid must be within the authority conferred by statute. A rule or regulation which goes beyond that which the legislature has authorized, or which violates the statute, or which alters, extends, or limits the source of its legislative powers is void. *Woods v. Midwest Conveyor Co.*, 231 Kan. 763, 771, 648 P.2d 234 (1982) (KCCR regulation ordering damages for pain, suffering, and humiliation exceeded statutory authority and was therefore void).

By enacting K.A.R. 21-46-3, the KCCR exceeded the scope of the Act, broadening its authority beyond the three areas of housing, employment, and public accommodations to student admission to schools. This is not regulation, but legislation, and we have long held that legislation may not be enacted under the guise of regulation. *Rhodes v. Harder*, 211 Kan. 820, 830-31, 508 P.2d 959, *aff'd as modified* 212 Kan. 500, 512 P.2d 354 (1973).

The district court correctly concluded that the subject matter presented by the complaints in this case fell outside the scope of K.S.A. 44-1009(c)(3) and that the KCCR's motion to enforce the subpoenas must be denied. The allegations presented by the KCCR complainants do not involve matters of public accommodation. Whether the scope of the Act should be broadened to cover the complaints of public school students who were denied the right to transfer to a school outside their attendance area is a matter for the legislature, not the courts.

Affirmed.